**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **U.S. EQUAL EMPLOYMENT** | ) | |
| **OPPORTUNITY COMMISSION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NO.**   1:22-cv-280 |
| | ) | |
| **v.** | ) | **COMPLAINT** |
| | ) | **AND JURY TRIAL DEMAND** |
| **HEARTFELT HOME HEALTHCARE** | ) | |
| **SERVICES, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), Title I of the Americans with Disabilities Act of 1990, as amended ("ADA"), and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of sex and disability and to provide appropriate relief to Jacqueline Melter who was adversely affected by such practices and to prevent further occurrence of such practices. As alleged with greater particularity in Paragraphs 14 to 48 below, the U.S. Equal Employment Opportunity Commission ("the Commission" or "EEOC") alleges that Defendant Heartfelt Home Healthcare Services, Inc. ("Defendant") subjected Melter to unlawful discriminatory discharge because of sex (pregnancy, childbirth and/or related medical conditions) and on the basis of disability (actual disability, regarded as disabled) in violation of Title VII and the ADA.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.

1

2.      This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII, as amended, 42 U.S.C. §§ 2000e-5(f)(1) and (3); Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a; and Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) & (3) of Title VII, as amended, 42 U.S.C. §§ 2000e-5(f)(1) & (3).

3.      The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Western District of Pennsylvania.

## PARTIES

4.      Plaintiff, the U.S. Equal Employment Opportunity Commission ("the Commission" or "EEOC"), is the Agency of the United States of America charged with the administration, interpretation and enforcement of Title VII of the Civil Rights Act and Title I of the ADA and is expressly authorized to bring this action under Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(1) and (3) and Section 107(a) of the ADA, 42 U.S.C. §§ 12117(a).

5.      At all relevant times Heartfelt Home Healthcare Services, Inc. ("Defendant"), a Pennsylvania corporation, has continuously been doing business in the Commonwealth of Pennsylvania and City of Erie, and has continuously employed at least fifteen (15) employees.

6.      At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Section 701(b), (g) and (h) of Title VII, 42 U.S.C. § 2000e(b), (g) and (h), and Section 101(5) of the ADA, 42 U.S.C.§ 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h).

7.      At all relevant times, Defendant has been a covered entity under the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

8.      More than thirty days prior to the institution of this lawsuit, Charging Party Jacqueline Melter filed a charge of discrimination with the Commission alleging violations of Title VII and the ADA by Defendant.

9.      On February 17, 2022, the Commission issued to Defendant an administrative Determination finding reasonable cause to believe that Defendant violated Title VII and the ADA and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

10.     The Commission engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the administrative Determination.

11.     The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

12.     On July 19, 2022, the Commission issued to Defendant a Notice of Failure of Conciliation.

13.     All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

14.     Since on or about May 2020 until on or about August 18, 2020, Defendant has engaged in unlawful employment practices because of sex in violation of Section 703(a) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a) and on the basis of disability in violation of Sections 102(a) and 102(b)(1) of the ADA, 42 U.S.C. §§ 12112(a) & (b)(1). These practices include discharging Melter because of pregnancy, childbirth and/or related

medical conditions and/or on the basis of her disability and because Defendant regarded her as disabled.

**Count I: Unlawful Discharge Because of Sex**
**(Pregnancy, Childbirth and/or Related Medical Conditions)**

15.      Jacqueline Melter was employed by Defendant in its home health care business from on or about March 2019 to on or about August 18, 2020 as a Licensed Practical Nurse ("LPN") Scheduling Coordinator.

16.      In Ms. Melter's LPN Scheduling Coordinator position, she was responsible for managing the staff scheduling for a caseload of clients who needed community home nursing support; conducting case management for a caseload of "registry" clients who were on waiting lists for services but needed periodic monitoring for potential service initiation and coordination of services; and conducting a limited number of human resources duties, including but not limited to working with new employees to obtain required hiring paperwork, coordinating drug screening, setting up training sessions, and infrequently holding hiring interviews.

17.      Ms. Melter is a LPN, and her position at Defendant had a preferred qualification for a LPN.

18.      Ms. Melter was pregnant from on or about February 2020 to on or about November 2020.

19.      Ms. Melter was informed by her physician that her pregnancy was high-risk to her, for reasons including but not limited to the interaction of her pregnancy with her pre-existing hypertension condition. Ms. Melter also experienced back pain related to her pregnancy.

20.      On or around March 2020, Ms. Melter informed Defendant officials Jean Sappington, Scott Teeter and Tina Borgia that she was pregnant.

21.    As of March 2020, Defendant's Owner and President Jean Sappington, Vice President Scott Teeter, and Director of Nursing Tina Borgia possessed actual knowledge that Ms. Melter was pregnant, and that she had hypertension.

22.    As of on or about July 2020, Sappington, Teeter, and Borgia possessed actual knowledge that she had a high-risk pregnancy, and that she experienced back pain related to her pregnancy.

23.    Between on or about May 2020 and July 2020, Sappington and Teeter told Melter that she needed to keep herself in the office and was a "liability" to be out "in the field" due to her pregnancy and in light of COVID-19, after which point they required her to stop conducting in-person client visits.

24.    In response to being barred from field duties, Ms. Melter told Sappington and Teeter that she wished to continue in-person client visits (with appropriate Personal Protective Equipment) but Sappington and Teeter insisted they did not want her out in the field in light of the COVID-19 pandemic and given her pregnancy.

25.    At approximately the same time that they restricted Ms. Melter from performing in-person client visits, Sappington and Teeter also reduced her caseload from around 15 or 16 cases down to around 12 or 13 cases.

26.    On or about August 18, 2020, Ms. Melter began having pregnancy contractions and went to the hospital.

27.    Because Ms. Melter was scheduled to work that day, she notified Defendant that she was going to the hospital relating to her pregnancy and would let them know when she knew more.

28.     Ms. Melter went to the hospital for evaluation and was cleared and discharged that morning without any work restrictions. The doctor also stated that (1) if Ms. Melter continued to have contractions and discomfort (as she did when she had arrived at the hospital); and (2) subject to the discretion of Ms. Melter's primary care OB/GYN doctor, bedrest could be a possibility in the near future.

29.     Following her discharge from the hospital, Ms. Melter went to Defendant's office and was sent to speak to Sappington and Teeter.

30.     Ms. Melter explained to Sappington and Teeter that she was feeling better and that the doctor had cleared her to work in her Scheduling position duties and suggested she take it easy and stay off her feet for long periods of time. She also told them that the ER doctor had stated that she could go on bedrest in the near future if she continued to have contractions and discomfort and if bedrest was ordered by her primary OB/GYN.

31.     Sappington and Teeter then told Ms. Melter that she was "a liability" to the company to keep on the payroll while pregnant and stated that she was being laid off. In response to being told that her employment was being terminated, Ms. Melter suggested to Sappington and Teeter that she could work from home or work more limited hours if Defendant was worried about her condition, but they rejected her suggestion and maintained that they were laying her off.

32.     Sappington and Teeter immediately collected Ms. Melter's company property and sent her to transition her caseload to other staff with Defendant.

33.     Ms. Melter also met with Director of Nursing Tina Borgia, who stated words to the effect that Ms. Melter should not be working and should stay at home and be worrying about herself while pregnant.

34.    Ms. Melter was never placed on bedrest by any clinician during her pregnancy in 2020.

35.    Ms. Melter never stated to Defendant or any of its agents or employees that she had been placed on bedrest.

36.    Defendant discharged Ms. Melter because of her sex (pregnancy, childbirth, and/or related medical condition).

## Count II: Unlawful Discharge on the Basis of Disability

37.    The Commission incorporates by reference the factual allegations set forth in Paragraphs 14 through 36, above.

38.    At all relevant times, Jacqueline Melter was a person with a disability under Sections 3(1)(A) and 3(1)(C) of the ADA, 42 U.S.C. § 12102(1)(A) & (C).

39.    At all relevant times since at least 2008, including but not limited to throughout the year 2020, Ms. Melter has had a physical impairment, hypertension, that substantially limits the operation of her major bodily functions, including but not limited to cardiovascular and circulatory systems, and her major life activities, including but not limited to breathing, speaking, seeing, thinking, and walking.

40.    Defendant regarded Ms. Melter as having a disability by discharging her because of her known non-transitory and non-minor impairment, hypertension.

41.    At all relevant times, Ms. Melter was qualified to perform all essential functions of her Scheduling Coordinator position, with or without reasonable accommodation.

42.    At all relevant times, including but not limited to during August 2020, Defendant and its personnel, including but not limited to Owner/President Jean Sappington, Vice President Scott Teeter, and Director of Nursing Tina Borgia, possessed actual knowledge that Ms. Melter

had hypertension.

43.     In a written statement to the Commission during the administrative investigation of Ms. Melter's charge of discrimination, Teeter, writing on behalf of Defendant in response to the charge of discrimination, stated that Defendant laid-off Melter due to its concerns about her health and the health of her child and citing, among other facts, Defendant's knowledge of her hypertension, which Defendant called "uncontrolled," and her back pain.

44.     Neither Sappington nor Teeter nor any other employee of Defendant requested that Ms. Melter or her health care professionals provide any medical documentation or information before making the decision to discharge her.

45.     At the time that Defendant discharged her, Melter was not restricted to bedrest or medically restricted from performing the essential functions of her position with Defendant because of hypertension or backpain.

46.     The effect of the practices complained of in paragraphs 14 through 45 above has been to deprive Ms. Melter of equal employment opportunities and otherwise adversely affect her status as an employee because of her sex (pregnancy, childbirth and related medical conditions) and on the basis of disability.

47.     The unlawful employment practices complained of in Paragraphs 14 through 45, above, were intentional.

48.     The unlawful employment practices complained of in Paragraphs 14 through 45, above, were done with malice or with reckless indifference to Ms. Melter's federally protected rights.

## **PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A.      Grant a permanent injunction enjoining Defendant, its officers, successors, agents, servants, employees, and all persons in active concert or participation with it, from engaging in employment practices which discriminate because of sex (including pregnancy, childbirth and/or related medical conditions) and/or disability.

B.      Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities regarding pregnancy, childbirth, and related medical conditions and disability, and which eradicate the effects of its past unlawful employment practices, including but not limited to an injunction mandating procedures and employee training regarding discrimination because of pregnancy, childbirth and/or related medical conditions and on the basis of disability.

C.      Order Defendant to implement non-discriminatory objectives, written policies, and practices regarding the terms and conditions of employment and sign and conspicuously post, for a designated period of time, a notice to all employees that sets forth the remedial action required by the Court and informs all employees that Defendant will not discriminate against any employee because of a pregnancy, childbirth and/or related medical conditions and/or disability, including that they will comply with all aspects of the ADA and Title VII.

D.      Order Defendant to make whole Jacqueline Melter by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of their unlawful employment practices, including but not limited to reinstatement and front pay.

E.      Order Defendant to make whole Jacqueline Melter by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in Paragraphs 14 through 48 above, in amounts to be determined at trial.

F.      Order Defendant to make whole Jacqueline Melter by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in Paragraphs 14 through 48 above, including but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

G.      Order Defendant to pay to Jacqueline Melter punitive damages for malicious and reckless conduct, as described in Paragraphs 14 through 48 above, in amounts to be determined at trial.

H.      Grant such further relief as the Court deems necessary and proper in the public interest.

I.      Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

GWENDOLYN YOUNG REAMS
ACTING GENERAL COUNSEL

CHRISTOPHER LAGE
DEPUTY GENERAL COUNSEL

LISA MORELLI
ACTING ASSOCIATE GENERAL COUNSEL
WASHINGTON, D.C.

By CMS
per authorization

Debra Lawrence

DEBRA M. LAWRENCE
REGIONAL ATTORNEY
EEOC – Philadelphia District Office
George H. Fallon Federal Building

10

31 Hopkins Plaza, Suite 1432
Baltimore, MD 21201
(410) 801-6691
(410) 962-4270 (facsimile)


RONALD L. PHILLIPS
SUPERVISORY TRIAL ATTORNEY
Ohio Bar No. 0070263
EEOC – Baltimore Field Office
George H. Fallon Federal Building
31 Hopkins Plaza, Suite 1432
Baltimore, MD 21201
(410) 801-6714
(410) 992-7880 (facsimile)
ronald.phillips@eeoc.gov


CASEY M. SHEA
TRIAL ATTORNEY
Maryland Bar No. 1706200165
EEOC – Baltimore Field Office
George H. Fallon Federal Building
31 Hopkins Plaza, Suite 1432
Baltimore, MD 21201
(410) 801-6728
(410) 992-7880 (facsimile)
casey.shea@eeoc.gov